UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


RICHARD LYNN HENSLEY            )
                               )
v.                             )            NO. 2:01-CV-142
                               )
ANTHONY MILES, *ET AL.*        )
                               )


MEMORANDUM  OPINION  AND ORDER


This declaratory judgment action is before the Court for consideration of the

objections of the defendant, Arkansas Property and Casualty Guaranty Fund

("Arkansas Fund")  [Doc. 155] to the Report and Recommendation of the United

States Magistrate Judge which recommends that the motion for summary judgment

filed by the plaintiff be granted and that the motion for summary judgment filed by

the defendant  Arkansas Fund  be denied.  [Doc. 154][1]

Arkansas Fund is a statutorily created entity which is responsible for

payment of claims of the insureds, including the plaintiff, of Legion Insurance

Company ("Legion"), which is insolvent, if those claims are covered claims as

_____

[1]  A Supplemental Report and Recommendation of the United States Magistrate Judge was filed
on January 26, 2005 [Doc. 161] which granted the motion of Arkansas Property and Casualty Guaranty
Fund to withdraw any defense that the North Carolina Guaranty Fund was the proper fund against which
plaintiff must pursue his claim in the event the Legion policy afforded coverage.  Thus, the question of
whether or not the Legion policy of insurance afforded uninsured/underinsured motorist coverage to the
plaintiff is the only question to be resolved in these motions for summary judgment.

defined by *Ark. Code Ann.* § 23-90-102. In other words, as pointed out by the Magistrate Judge, the Arkansas Fund stands in Legion's corporate shoes as far as its basic liability to the plaintiff is concerned. The parties agree that there are no issues of fact in dispute in this matter and that the case is, therefore, ripe for resolution by summary judgment. The sole issue is whether or not the Legion policy of insurance at issue in this case afforded uninsured/underinsured coverage to the plaintiff in this case.

28 *U.S.C.* § 636(b)(1) provides, in pertinent part:

> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed finding or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the finding or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

This Court's *de novo* review of the Magistrate Judge's report is both statutorily and constitutionally required. *United States v. Worley*, 193 F. 3d 380, 383-384 (6th Cir. 1999); *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). After careful consideration of the record as a whole, the Report and Recommendation of the Magistrate Judge will be adopted and approved for the reasons set forth below.

2

*FACTS*

On July 5, 2000, the plaintiff, Richard Lynn Henlsey ("Hensley") and the defendant, Anthony Miles ("Miles"), were involved in an automobile accident in Sullivan County, Tennessee. At the time of the accident, Hensley was operating a tractor-trailer that was leased to Fikes Trucking Company, Inc. ("Fikes") of Arkansas and was hauling a load of cargo for Fikes.[2] Miles was operating a rented vehicle owned and self-insured by Enterprise Rent-A-Car ("Enterprise") when he lost control, crossed the median between the north bound and south bound lanes of Interstate 81 and crashed into Mr. Hensley's truck. Miles was clearly at fault in the accident and Mr. Hensley was seriously injured. A tort action was ultimately filed in this Court (Civil action No. 2:01-CV-124) and remains pending. Miles had no insurance.

Legion issued policy of insurance no. CA112021234 ("the Legion policy") to Fikes Trucking. The Legion policy included uninsured /underinsured motorist coverage and Hensley was a covered insured in light of the circumstances existing in this case. The Arkansas Fund makes two arguments that the Legion policy affords no coverage to Hensley, however. First, the Arkansas Fund argues that the Legion policy excluded any coverage while the truck was being used " to carry

---

[2] The title owner of the tractor-trailer was Jo Hartley, with whom Hensley was a partner in a business known as H & H Logistics.

property in any business".   Second,  the Arkansas Fund argues that even if the

Legion policy did cover the accident, nevertheless the uninsured motorist coverage

was not triggered under the terms of the policy.

In pertinent part, a change endorsement to the Legion policy dated October

1,  1991, reads as follows:

Liability coverage for a covered "auto" described in the  Schedule is changed as
follows:

      1.  The following exclusions are added:
      This insurance does not apply to:

      a.  A covered "auto" while used to carry property in any business.

      b.  A covered "auto" while used in the business of anyone to whom
      the "auto" is rented.

Uninsured/underinsured motorist coverage in the Legion policy is provided

by another change endorsement, and the pertinent parts read as follows:

A.  **COVERAGE**

      1.  We will pay all sums the "insured" is legally entitled to
      recover as compensatory damages from the owner or driver
      of an "uninsured motor vehicle" or an "underinsured motor
      vehicle".  The damages must result from "bodily injury"
      sustained by the "insured" caused by an "accident".  The
      owner's or driver's liability for these damages must result
      from the ownership, maintenance or use of the "uninsured
      motor vehicle" or the "underinsured motor vehicle".


. . . .

F.  **ADDITIONAL  DEFINITIONS**

4

As used in this endorsement:

. . . .

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

    a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

    b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

    c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

    However, "uninsured motor vehicle" does not include any vehicle:

    (1) Owned or operated by a self insurer under any applicable motor vehicle law, except a self insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; . . . .

4. "Underinsured motor vehicle" means a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "accident" provides a limit that is less than the amount an "insured" is legally entitled to recover as damages caused by the "accident";

    However, "underinsured motor vehicle" does not include any vehicle:

    a. Owned or operated by a self insurer under any applicable motor vehicle law;

. . . .


## *Objections*

5

Defendant Arkansas Fund objects to the recommendation of the United States Magistrate Judge to find uninsured motorist coverage on behalf of Hensley under the Legion policy on the basis that his decision is "contrary to Tennessee statutes, the clear language of the policy, and directly conflicts with a previous ruling of the District Court in this case." The Court will deal with each of these issues separately.

### *The Arkansas Fund's argument that the Magistrate Judge's Report and Recommendation is Contrary to Tennessee Statutes*

As an initial matter, the Arkansas Fund contends that the Tennessee Uninsured Motorist statute precludes coverage for Hensley under the Legion policy because the owner of the vehicle operated by Miles (Enterprise) was a self insured entity. Hensley argues, on the other hand, that the Tennessee statute is irrelevant and that Arkansas law should be applied in deciding this dispute since the policy of insurance was issued in Arkansas, a matter about which there is no dispute.[3] This choice of law question was not specifically discussed by the

---

[3] The tractor-trailer operated by Hensley was titled in the Commonwealth of Virgina and garaged in North Carolina. Hensley was a resident of North Carolina. None of these facts affect the choice of law questions.

6

Magistrate Judge and it is unclear whether the Magistrate Judge applied Tennessee or Arkansas law, although it does not appear that the Magistrate Judge relied on any language of the Tennessee statute.

In a diversity action brought pursuant to 28 *U.S.C.* § 1332, this District Court, sitting in Tennessee, must apply the substantive law, including the choice of law rules, of the forum state, that is, Tennessee. *Hayes v. Equitable Energy RES Co.*, 266 F. 3d 560, 566 (6th Cir. 2001) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1447 (1941)*). It is the settled rule in Tennessee that the construction and validity of contracts, including insurance policies, are governed by the law of the place where the contract was made. *Great American Insurance Co. v. Hartford,* 519 S.W. 2d 579 (1975); *Ohio Casualty v. Travelers*, 493 S.W. 2d 465 (1973); *Karr v. American Universal Ins. Co.*, 341 F. 2d 220 (6th Cir. 1965). It is undisputed that the policy of insurance at issue in this case was issued and delivered in the State of Arkansas; therefore, it is the law of Arkansas and not the law of Tennessee that must be applied to the interpretation of the Legion policy in this case and the Tennessee statute cited by the Arkansas Fund is simply irrelevant.

### *The Arkansas Fund's argument that the Legion policy excludes coverage while the truck was used to "to carry property in any business"*

The Fund's argument in this regard can be "disposed of rather quickly" as indicated by the Magistrate Judge. It is undenied that, at the time of the accident involving Hensley and Miles, Hensley was carrying cargo on behalf of Fikes. It is equally undisputed that the change endorsement set forth above, by its own clear and unambiguous terms, was limited to liability coverage, not uninsured motorist coverage. The exclusion of the policy relating to "carry[ing] property in any business" is inapplicable to the uninsured motorist coverage of the Legion policy. Thus, the Fund's argument in this regard is without merit.

### _The Arkansas Fund's argument that the vehicle operated by Miles and owned by Enterprise was excluded from the definition of an "uninsured motor vehicle" in the Legion policy_

Having determined that Arkansas law applies to the interpretation of the Legion policy, the Court's initial point of inquiry is the statutory provisions of the Arkansas Code related to uninsured motor vehicles. The uninsured motor vehicle law of the State of Arkansas is contained in Title 23, Chapter 89 of the Arkansas Code. More specifically, _Ark. Code Ann._ § 23-89-401 provides that an

". . . "uninsured motor vehicle" shall be deemed to include, subject to the _terms_

8

*and conditions of the coverage,* an insured motor vehicle when the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency." This statutory provision is of only minimal assistance to the Court in interpreting the Legion policy other than that it clearly establishes a legislative intent in Arkansas that the terms of uninsured motorist coverage should cover situations where the insurer is unable to make payment with respect to the legal liability of its insured because of insolvency. No other provision of the Arkansas Code appears to have any application to the situation raised in this case.

Given that the Arkansas statute is not dispositive of the question raised herein, the question of whether or not the Legion policy precludes coverage to Hensley in this case because the owner of the vehicle driven by Miles (Enterprise) was a self insured entity not legally liable for Miles' actions is a matter of interpretation of the provisions of the Legion policy. The question is also apparently one of first impression as no Arkansas case interpreting the precise policy provisions at issue in this matter has been found by this Court. Several decisions of the Arkansas courts are, however, helpful in interpreting the provisions of this policy.

The Arkansas courts have established several general rules of construction

9

which apply to the interpretation of insurance contracts issued in the State of

Arkansas.     It appears to be clearly settled Arkansas law that an insurer may

contract with its insured upon whatever terms the parties may agree upon which

are not contrary to statute or public policy. *Aetna Ins. Co. v. Smith*, 263 Ark. 849,

568 S.W. 2d 11 (1978).   Insurance policies are, however, to be strictly construed

against the insurer.  *Smith v. Prudential Property and Casualty Ins. Co.*, 340 Ark.

335, 10 S.W. 3d 846 (2000);  *M.F.A. Mutual Ins. Co. v. McKinley*, 245 Ark. 326,

432 S.W. 2d 484 (1968).   If a reasonable construction would justify recovery

under an insurance policy, it is the duty of the court to give that construction to the

policy.  *Smith* at 10 S.W. 3d 850.  Said another way, the Arkansas courts have

established a cardinal rule of insurance law that a policy of insurance is to be

construed liberally in favor of the insured and strictly against the insurer or, as

more fully stated, if the language employed is ambiguous, where there is doubt or

uncertainty as to its meaning and it is fairly susceptible of two interpretations, one

favorable to the insured and the other favorable to the insurer, the former will be

adopted.  *Nationwide Mutual Ins. Co. v. Worthey*, 314 Ark. 185, 861 S.W. 2d 307

(1993); *Drummond Citizens Ins. v. Sergeant*, 266 Ark. 611, 588 S.W. 2d 419

(1979).

　　　　In reviewing an insurance policy, when the terms of the policy are clear, the

language in the policy controls. *Columbia Mut. Ins. Co. v. Home Mut. Fire Ins. Co.*, 74 Ark. App. 166, 47 S.W. 3d 909 (2001)   If a policy provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction; it is the duty of the courts to give effect to the plain wording of the policy. *Smith v. Southern Farm Bureau Cas. Ins. Co.*, 353 Ark. 188, 114 S.W. 3d 205 (2003)  A policy will not be interpreted to bind the insurer to a risk that is plainly excluded and for which it was not paid. *First Financial Ins. Co. v. National Indemnity Co.*, 49 Ark. App. 115, 898 S.W. 2d 63 (1995).  If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, the policy will be construed liberally in favor of the insured and strictly against the insurer. *Smith, supra.*   The language of an insurance policy is to be construed in its plain, ordinary and popular sense.  The fact that a term is not defined in a policy does not automatically render it ambiguous.  As a guideline of contract interpretation, the different clauses of a contract must be read together and the contract should be construed so that all parts harmonize. *Id.*   Language is ambiguous if there is doubt or uncertainty as to its meaning, and it is fairly susceptible to more than one reasonable interpretation. *Gawrieh v. Scottsdale Ins. Co.*, 83 Ark. App. 59, 117 S.W. 3d 634 (2003);

11

*Continental Cas. Co. v. Davidson*, 250 Ark. 35, 463 S.W. 2d 652 (1971).

With respect to uninsured motorist coverage, the plaintiff must show that both the tortfeasor and the vehicle driven by the tortfeasor are uninsured. *Home Ins. Co. v. Harwell*, 263 Ark. 884, 568 S.W. 2d 17 (1978)(vehicle); *Southern Farm Bureau Cas. Ins. Co. v. Gottsponer*, 245 Ark. 735, 434 S.W. 2d 280 (1968) (driver). Likewise, uninsured motorist provisions of an insurance policy must be viewed in light of the purpose of the uninsured motorist statute which is to require that the same amount of coverage be available to one injured by the negligence of an uninsured motorist as would be available had the motorist had the minimum coverage necessary to satisfy the Arkansas Motor Vehicle Safety Responsibility Act, or, in other words, had the motorist been covered by appropriate liability insurance. *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 568 S.W. 2d 11 (1978)

With these rules of construction in mind, this Court now turns to an examination of the Legion policy in light of the factual circumstances existing in this case. It is undisputed that Miles, the driver of the automobile which collided with Hensley, was uninsured. The vehicle he was driving, however, was self insured by Enterprise and the Arkansas Fund argues that, because the Enterprise vehicle was self insured, Legion is not obligated to provide uninsured motorist coverage under the clear terms of its policy. As noted by the Magistrate Judge,

12

Enterprise has been dismissed from the underlying tort action based upon a finding that it has no duty or legal liability to compensate Hensley for the tortious action of Miles.  The Magistrate Judge found, therefore, that Enterprise's self insurance was "utterly irrelevant" and that there was and is no insurance coverage available to Miles, thus triggering the uninsured motorist coverage of the Legion policy.  For the reasons set forth below, this Court must agree.

The Legion policy clearly obligates Legion to pay all sums Hensley is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle where bodily injury is sustained as the result of an accident.  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured or underinsured motor vehicle.  Under the terms of the coverage, therefore, the only question to be decided is whether or not the motor vehicle driven by Miles on the date of his accident with Hensley was an uninsured motor vehicle.

The policy defines an uninsured motor vehicle as a vehicle (a)  for which no "liability bond or policy" is in effect at the time of the accident, (b)  for which an insuring or bonding company denies coverage or becomes insolvent, or (c)  there is a hit-and-run vehicle and neither the driver nor owner can be identified.  Absent any further definitions or exclusions from coverage, the Legion policy would

clearly afford coverage to Hensley under the facts and circumstances of this case.

Therein the problem arises, however, because the policy further provides that an

"uninsured motor vehicle" does not include any vehicle "owned or operated by a

self-insurer under any applicable motor vehicle law, except a self-insurer who is or

becomes insolvent and cannot provide the amounts required by that motor vehicle

law".  The policy further contains a similar exclusion from the definition of

"underinsured  motor vehicle"; however, the exclusion is worded significantly

differently in that it appears, by its language, to exclude all motor vehicles owned

or operated by a self insured, not just those self insurers who are solvent and can

provide the amounts of liability coverage required.[4]

     The Arkansas Fund argues that because the vehicle operated by Miles was

owned by Enterprise, a self insurer, the vehicle operated by Miles was not an

uninsured motor vehicle under the clear language of the policy  and the Legion

uninsured  motorist coverage, therefore, does not apply.  The language of the

policy, however, is neither as clear nor unambiguous as the Arkansas Fund argues.

As the Magistrate Judge appropriately asks:  "What is the difference between

---

     [4]  It appears that the purpose of the self-insurer language of the policy, in the first instance, was to
assure that a self-insured vehicle could not automatically be considered uninsured simply because the
self-insurer was not an insurance company and no insurance policy had been issued for the vehicle.  No
reason exists to treat a vehicle covered by a policy of insurance issued by an insurance company
differently from a vehicle which is self-insured for the purpose of determining its status as an uninsured
motor vehicle.

insurance that never existed and insurance that is unavailable, or inapplicable? The answer, obviously, is that there is no difference." The Magistrate Judge determined that his conclusion was confirmed by paragraph (F)(3)(b) of the Legion change endorsement which provides that an uninsured motor vehicle includes any vehicle for which an **insuring** or bonding company denies coverage or becomes insolvent. In the first instance, the uninsured motorist coverage of the Legion policy would be available to Hensley if Enterprise had been insured by an insurance company which had issued a policy of liability insurance but the company had then denied coverage under the policy. Under the Arkansas Fund's argument, the self insurer, Enterprise, would be excluded from the definition of an uninsured motor vehicle under the same circumstances and the Legion policy would afford no coverage. When viewing the uninsured motorist provisions of the Legion policy in total, it is clear that the Legion policy contemplated the possibility that its uninsured motorist coverage would apply if the insuring entity became insolvent or denied coverage to its insured. By the language of the Legion policy the exclusion of a self insured from the definition of uninsured motor vehicle does not apply to a self insurer who becomes insolvent and cannot provide the required coverage. When read together, the policy provisions clearly establish that Legion intended to provide coverage both in the situation where the insuring entity became

15

insolvent and in the situation where the insuring entity denied coverage, regardless of whether the insuring entity is an insurance company or a self-insurer. In fact, courts around the country are almost unanimous in equating insolvency of an insurer with a denial of coverage. *See,* for instance *Superior Risk Ins. Co. v. Dudas*, 38 Ohio App. 2d 64, 312 N.E. 2d 534 (1974); *Katz v. American Motorist Ins. Co.*, 244 Cal. App. 2d 886, 53 Cal. Rptr. 669 (1966); *Fireman's Ins. Co. v. Diskin*, 255 Cal. App. 2d 502, 63 Cal. Rptr. 177 (1967); *Bartholomew v. Glen Falls Ins. Co.*, 241 So. 2d 698 (Fla. App. 1970); *Farkas v. Hartford Accident & Indemnity Co.*, 285 Minn. 324, 173 N.W. 2d 21 (1969); *Seabaugh v. Sisk*, 413 S.W. 2d 602 (Mo. App. 1967); *General Accident v. Shasky*, 266 Or. 312, 512 P. 2d at 987 (1973); *Murray v. Montana Ins. Guaranty Assoc.*, 175 Mont. 220, 573 P. 2d 196 (1997); *Travis v. General Accident Group*, 31 A.D. 2d 20, 294 N.Y.S. 2d 874 (1968).

This Court finds, therefore, that the clear and unambiguous language of the Legion policy itself contemplates uninsured motorist coverage both when the insuring entity, whether an insurance company or a self-insurer, becomes insolvent and when the insuring entity denies coverage to its insured. Furthermore, even if the provisions of the policy are ambiguous and susceptible to both interpretations, this Court must interpret the policy in the way most favorable to

16

Hensley. Likewise, to give effect to the exclusion in the policy as urged by the Arkansas Fund would deprive Hensley of the benefit of the purpose of the Arkansas uninsured motorist statute which is to provide a basic minimum coverage against the actions of financially irresponsible motorists. *See Payne v. Farm Bureau Mutual Ins. Co. of Arkansas Inc.*, 298 Ark. 540, 768 S.W. 2d 543 (1989).

Although the appellate courts of Arkansas have not been confronted with the specific policy language at issue in this case, this Court also believes that the Arkansas Fund's interpretation of the policy provisions in this case might very well violate the public policy of the State of Arkansas and would certainly defeat the purposes for which the Arkansas uninsured motorist statute was enacted. Three cases illustrate the point.

In *Glen R. Vaught v. State Farm Fire & Casualty Co.*, 413 F. 2d 539 (8th Cir. 1969), the Eighth Circuit, applying Arkansas law, considered a case, the facts of which are remarkably similar to the facts in this case. In *Vaught*, the plaintiff was involved in an accident in which an automobile driven by him and a vehicle owned by the City of North Little Rock, driven by Joseph Roberts, an employee of the city, collided. Since neither the City of North Little Rock nor Roberts had insurance covering the vehicle, the plaintiff instituted a suit against the defendant, State Farm Fire & Casualty Company, under the terms of a State Farm policy

which included coverage for uninsured automobiles but excluded automobiles

owned by municipality from the term "uninsured automobiles." The District Court

held that the policy provision was contrary to the public policy of the State of

Arkansas as set forth in its uninsured motorist statute and held the exclusion

invalid. The District Court held:

> The Arkansas statute requires coverage 'for the
> protection of persons insured thereunder who are legally
> entitled to recover damages from owners or operators of
> uninsured motor vehicles. ***' Under existing Arkansas
> law it is true that the plaintiff had no cause of action
> against the City of North Little Rock, the owner of the
> vehicle, but the plaintiff did have a cause of action
> against the operator of the uninsured vehicle, Joseph
> Roberts. To give effect to the exclusion in the policy
> would deprive plaintiff of the benefit of the statute,
> although the collision was with one who is legally liable,
> and one who was driving an uninsured vehicle at the time
> of the accident.

> The obvious intent of the Legislature in enacting the
> Uninsured Motorist Act was to provide insurance to
> policy holders such as plaintiff Vaught against
> inadequate compensation for injuries in a collision with
> uninsured motorist vehicles at least to the extent provided
> by statute.

> In the cases cited from other jurisdictions the courts have
> refused to allow limitations contained in the insurance
> policies to subvert the intent of the state statutes.

> There does not appear to be any valid legal reason for the
> limited definition of 'uninsured automobile' contained in
> plaintiff Vaught's policy. To allow such a special

18

> exception from coverage written into the insurance
> contract would defeat the purpose for which the statute
> was passed, and the court finds that the definition
> contained in Vaught's policy . . . is void and of no effect.

*Carter v. St. Paul Fire & Marine Ins. Co.*, 283 F. Supp. 384, 388 (D. Ark. 1968);

(consolidated in the District Court with *Vaught v. State Farm Fire & Casualty Co.*)

Stating that "we are convinced that if the Arkansas Supreme Court were faced with the question raised here that its opinion would be the same as that of the District Court," the Eighth Circuit affirmed the District Court's decision. This Court believes the same reasoning to be applicable in this case.

The second case is *Robey v. Safeco Ins. Co. of America*, 270 F. Supp. 473 (D.C. Ark. 1967). In that case, the District Judge, applying Arkansas law, had before him the question of the legal effect of a policy provision contained in an uninsured motorist policy limiting liability where there was "other insurance." Safeco had issued two different policies to the plaintiff insuring two separate vehicles and the policies were identical, with the exception of the amount of coverage, and both policies contained the "other insurance" exclusion. The plaintiff had recovered under the first policy but Safeco denied coverage on the second. The District Judge held the "other insurance" provisions in the Safeco policies to be invalid under Arkansas law.

The third case which is illustrative as to the public policy of the State of

Arkansas is the Arkansas Supreme Court decision in *State Farm Mutual Automobile Ins. Co. v. Cates*, 261 Ark. 129, 546 S.W. 2d 423 (1977). Facts in the case were relatively simple. Cates was injured when his vehicle was struck in the rear by a gravel truck driven by an employee of J.T. Allen. Cates suffered damages of at least $20,000.00 and, in a separate case, sued the driver and owner of the gravel truck and the owner's company paid its policy limits. Louisiana Industries Inc., who paid J.T. Allen for hauling gravel, was joined in the suit. Its insurance company paid Cates $7,500.00 but in the settlement agreement denied that it was the employer of either Allen or the driver and recited that the settlement was a compromise of a doubtful and disputed claim. Cate's insurance with State Farm provided for a maximum of $10,000.00 for personal injury damages resulting from an accident caused by an uninsured vehicle. When State Farm refused to pay Cates, arguing that the gravel truck was insured, or if not, the payment of $7,500.00 by Louisiana Industries should reduce its liability to zero, he sued under his uninsured motorist coverage. The Court framed its question and the answer to the question as follows:

> "Therefore, the question is, did Louisiana Industries insurance cover the gravel truck? If it did, the truck would be insured. If not, the truck would be uninsured. Since the jury found that Dorathy (the driver) was not an agent or employee of Louisiana Industries, it follows that Louisiana Industries was not ***legally responsible*** for the

use of the vehicle.  Therefore, the truck was uninsured."

The reasoning of all these cases clearly establishes that the public policy of Arkansas cannot be furthered by enforcing exclusions such as the one contained in the Legion policy.  To do so would sabotage the purpose of the Arkansas uninsured motorist statute which is to provide a basic minimum coverage against the actions of financially irresponsible motorists.

**The Fund's argument that the ruling of the Magistrate Judge directly conflicts with a previous ruling of the District Court**

The Fund accurately points out that this Court in a memorandum opinion entered March 9, 2004 dismissed GEICO Direct as a party to this declaratory judgment action based upon a policy of insurance it issued covering the personal vehicle of the plaintiff.  The GEICO policy offered uninsured motorist coverage using language virtually identical to the Legion policy in defining an uninsured motor vehicle.  This Court declared that "the vehicle owned by Enterprise that was involved in this accident is not uninsured for purposes of Tennessee or North Carolina law, or under the terms of the GEICO policy.  As set forth earlier in this memorandum opinion, the Legion policy must be interpreted by applying the law of the State of Arkansas and a prior holding of this Court under either Tennessee or

North Carolina law is simply irrelevant. Such holding has not become the law of this case with respect to whether or not the Legion policy affords coverage to the plaintiff.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Magistrate Judge's Report and Recommendation [Doc. 161] is **ADOPTED** and **APPROVED**, that the motion for summary judgment filed by the plaintiff is **GRANTED** and the motion for summary judgment filed by the defendant, Arkansas Property and Casualty Guaranty Fund, is **DENIED**. It is specifically declared that the Legion policy which is the subject of this cause affords uninsured motorist coverage to the plaintiff and Hensley's claim is a covered claim as defined by *Ark. Code Ann.* § 23-90-103.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE